UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENYATTA WILLIAMS,

        Plaintiff,

v.

CITY OF GRAND RAPIDS,
*et al.*,

        Defendants.
_____/

Case No. 1:13-cv-653

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This matter is now before the court on plaintiff's "Affidavit of Truth Concerning Motion of Summary Judgment in favor of Kenyatta Williams" which the Clerk's Office docketed as a motion for summary judgment (docket no. 31), defendant Leonard and Rekucki's "Cross-Motion for Summary Judgment based on Qualified Immunity" (docket no. 39), and defendant City of Grand Rapids and Chief Belk's Motion for summary judgment (docket no. 59).

    **I.**    **Plaintiff's allegations**

Plaintiff's amended complaint names five defendants: the City of Grand Rapids (the "City"); Grand Rapids Police Chief Kevin Belk ("Chief Belk"); Grand Rapids Police Officer Gregory Rekucki ("Officer Rekucki"); and Grand Rapids Police Officer Anthony Leonard ("Officer Leonard"). Amend. Compl. at ¶¶ 10-19. Plaintiff sues Chief Belk in his official capacity, and Officers Leonard and Rekucki in their individual capacities. *Id.* Plaintiff's amended complaint sets forth the following allegations. On September 4, 2011, plaintiff and two friends drove from Kalamazoo "to patronize Cheero's Sports Bar" located in the City. *Id.* at ¶ 40. Cheero's was open at the time, but there was a line to enter the bar. *Id.* at ¶ 41. Plaintiff exited the car to wait in line

while one of his friends parked the vehicle. *Id.* at ¶ 42. It started to rain, so plaintiff returned to wait in the vehicle while his other friend stayed in line to enter Cheero's. *Id.* At some point in time, Officers Rekucki and Leonard approached the vehicle, pulled plaintiff and his friend out of the vehicle, arrested them for criminal trespass, and handcuffed plaintiff and his friend. *Id.* at ¶¶ 43-44. Plaintiff alleged that the handcuffs caused him "considerable pain." *Id.* at ¶ 44. While plaintiff also referred to a "slap in the face," based on the record, it appears that this is a figurative, as opposed to a literal, reference. At no point in time did a representative of Cheero's ask plaintiff to leave the parking lot or communicate with Officers Rekucki or Leonard regarding whether to arrest plaintiff. *Id.* at ¶ 45. Plaintiff was transported to local jail where he spent about 24 hours before a friend posted his bond. *Id.* at ¶ 48.

According to plaintiff, the City solicits businesses to sign general "Letters of Intent to Prosecute Trespassers" which the City's police officers construe as authorizing them to arrest individuals for trespassing on the business' property. *Id.* at ¶¶ 20-39. Plaintiff further stated that the Letters of Intent do not purport: "to allow the Grand Rapids Police Department to decide, without any further consultation with the property owner/occupant, that a particular individual is not authorized to be on the property;" "to authorize officers of the Grand Rapids Police Department to arrest individuals simply for being present on the property;" "to create probable cause that any particular individual is trespassing;" or "to eliminate the constitutional requirement that an arrest for criminal trespassing must be supported by probable cause to believe that the arrested individual was trespassing." *Id.* at ¶¶ 30-37.[1] According to plaintiff, the "police video of the incident" shows that

---

[1] The Court notes that plaintiff's amended complaint does not include paragraphs numbered 33, 34, 35 and 36.

when plaintiff and his friend questioned the basis of their arrests, the officers informed them they were arrested because the owner of Cheero's had signed this type of "Letter of Intent." *Id.* at ¶ 46. Similarly, the police report confirmed that "the officers' sole proffered justification for arresting [plaintiff] was that the owner's of Cheero's had signed a general Letter of Intent" and that the officers did not report any facts to establish probable cause that plaintiff was trespassing. *Id.* at ¶ 47.

Plaintiff further alleged that the use of the Letters of Intent are part of an illegal policy of the City (in his words):

> 56. The Grand Rapids Police Department maintains a custom, policy, or practice of arresting individuals for trespassing on the publicly-accessible property of private businesses across the city, based on the fact that the owner of the business in question signed a generalized Letter of Intent, even though the businesses in question are open to the public, the alleged trespassers have never been asked to leave by the lawful owner or occupant of the property, and there is no probable cause for a trespassing arrest.
>
> \*     \*     \*
>
> 67. In addition, the failure of Defendants Belk and the City of Grand Rapids to instruct their officers immediately to cease using or relying on generalized Letters of Intent as a substitute for probable cause, after Plaintiff Kenyatta Williams outlined the unconstitutionality of the practice, reflects a conscious choice by Defendants to continue this unconstitutional practice.
>
> 68. Defendants Belk and the City of Grand Rapids have either affirmatively trained and supervised their police officers so as to encourage the unconstitutional practice of using Letters of Intent as a substitute for probable cause, or, alternatively, have failed to meet their duty to adequately train and supervise their police officers in order to ensure that those officers act in accordance with well-established constitutional principles.
>
> 78. The custom, policy and practice of Defendants Belk and the City of Grand Rapids - including official policies, the actions of City and GRPD officials with final decision making authority, the failure to adequately train, supervise, and discipline GRPD officers for the challenged conduct, and the tolerance of repeated violations of individuals' Fourth Amendment rights - are the moving force behind

       the challenged conduct and proximately caused the development and proliferation of the practice of using generalized Letters of Intent as a basis for trespassing arrests.

       79.    The custom, policy and practice of Defendants Belk and the City of Grand Rapids-including official policies, the actions of City and GRPD officials with final decision making authority, the failure to adequately train, supervise, and discipline GRPD officers for the challenged conduct, and the tolerance of repeated violations of individuals' Fourth Amendment rights - were the moving force behind the unconstitutional conduct of Defendants, Rekucki, and Leonard, and proximately to effectuate the unlawful arrests of Plaintiff Kenyatta Williams[.]

*Id.* at ¶¶ 56, 67, 68, 78 and 79.

       The City attorney prosecuted plaintiff for violating Grand Rapids City Ordinance § 9.133(1). *Id.* at ¶ 50. Plaintiff pled not guilty. *Id.* at ¶ 51. The trespassing charges were subsequently "nolle prossed" and dismissed. *Id.* In this regard, plaintiff attached a Judgment of Sentence to his amended complaint, which states that on January 26, 2012 plaintiff was "found guilty" of trespassing while at the same time designating the case as "Nolle Prosequi." *See* Judgment of Sentence (docket no. 22-4).

       In reciting the procedural history of this matter, plaintiff's complaint fails to mention that on the date in question, September 4, 2011, he was also arrested for possession of marijuana, contrary to M.C.L. § 333.7403(2)(d). *See* Grand Rapids Police Department Incident Report Form (docket no. 43-3); Leonard Aff. at ¶¶ 33-53 (docket no. 41-1); *People v. Williams*, No. 11-SM-1817 (61st Dist. Ct.) (Register of Actions and Order of Dismissal) (docket no. 44-5). While plaintiff refers to this arrest in subsequent papers filed in this matter, the Court notes that plaintiff's complaint is limited to the legality of his arrest for trespass.

       Plaintiff has alleged one cause of action, arising from a violation of the Fourth Amendment's prohibition against unreasonable searches and seizures by the government. *Id.* at ¶ 86. Specifically, plaintiff alleged that "Grand Rapids police officers' practice of arresting

4

individuals for trespassing in the absence of probable cause, and based solely on the fact that the owner of the property in question had signed a generalized Letter of Intent, violates the clearly established Fourth Amendment prohibition against unreasonable searches and seizures." *Id.* at ¶ 87. For his relief, plaintiff seeks a permanent injunction "restraining [d]efendants, their employees, agents, and successors from continuing to use generalized Letters of Intent as a basis for making individual trespass arrests." *Id.* at p. 12. Plaintiff also seeks damages in the amount of "$2,500,000.00 Million Cardits." *Id.*

## II. The motions for summary judgment

### A. Legal standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell

two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B.     Plaintiff's affidavit/motion for summary judgment

Plaintiff filed a three-page document entitled "Affidavit of truth concerning motion for summary judgment in favor of Kenyatta Williams" (docket no. 31), which the Clerk's Office docketed as a motion for summary judgment. While plaintiff's affidavit refers to Fed. R. Civ. P. 56(a), it is not in the form of a motion for summary judgment, but merely a one-paragraph notarized statement which includes both factual statements and legal conclusions. Despite the fact that it was not filed in accordance with the Court rules, the Court noted at the Rule 16 Conference that it was docketed as a motion for summary judgment and would treat it as such.[2]

Plaintiff's one-paragraph affidavit/motion states two legal positions. First, plaintiff states that Officers Leonard and Rekucki did not have probable cause to arrest him because plaintiff "was not told that I was unwelcome on the premises, which is the key element to being arrested for Trespassing!" Plaintiff's Motion at p. 2. Second, plaintiff states that the "probable cause" for which he was arrested (presumably for possession of marijuana) "did not come into play until after I was arrested," and that it did not exist because he was protected under the medical marihuana act. *Id.* Defendants City and Chief Belk filed a 21-page response to the motion which raised other issues and sought a grant of summary judgment for defendants. *See* Response (docket no. 38). The City and

---

[2] The Court notes that the motion did not comply with Fed. R. Civ. P. 7(b)(1) (*e.g.*, it did not state with particularity the grounds for seeking the order or state the relief sought or with W.D. Mich. LCivR 7.1(a) (requiring that motions filed in this court must be accompanied by a supporting brief, which "shall contain a concise statement of the reasons in support of the party's position and shall cite all applicable federal rules of procedure, all applicable local rules, and the other authorities upon which the party relies").

Chief Belk subsequently filed a separate motion for summary judgment (*see* docket no. 59) which incorporated arguments set forth in their response. Finally, the Clerk's Office re-docketed plaintiff's affidavit/motion as a *response* to Officer Leonard and Rekucki's later-filed motion for summary judgment. *See* Response to motion for summary judgment (no docket number assigned) (Nov. 22, 2013). Based on this record, the Court will consider plaintiff's affidavit/motion, the City and Chief Belk's motion, and Officer Leonard and Rekucki's motion as all seeking summary judgment on behalf of the movant.

### C. Officer Leonard and Rekucki's Motion for summary judgment

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Here, plaintiff has alleged that defendants violated his Fourth Amendment rights by arresting him without probable cause. "The Fourth Amendment protects against unreasonable searches and seizures and requires that arrest warrants be issued only upon a showing of probable cause. U.S. Const. amend. IV." *Robertson v. Lucas*, 753 F.3d 606, 618 (6th Cir. 2014). "To state a Fourth Amendment false arrest claim, a plaintiff must prove that the arresting officer lacked probable cause to arrest the plaintiff." *Id.* (internal quotation marks omitted). However, "[a] valid arrest based upon then-existing probable cause is not vitiated if the suspect is later found innocent."

*Kinlin v. Kline*, 749 F.3d 573, 578 (6th Cir. 2014), quoting *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir.1988). "Indeed, probable cause requires only the probability of criminal activity, not some type of prima facie showing." *Id.*, quoting *Jolley v. Harvell*, 254 Fed.Appx. 483, 486 (6th Cir.2007) (brackets and internal quotation marks omitted).

In their motion for summary judgment, defendants Leonard and Rekucki do not contest the facts or legal merits of plaintiff's Fourth Amendment claim. Rather, the officers contend that they are they are entitled to summary judgment on the ground of qualified immunity. Under the doctrine of qualified immunity, government officials performing discretionary functions are shielded from civil liability unless their conduct violates clearly established constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, a defendant is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 231-33 (2009); *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir 2011). The court may exercise its sound discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

As discussed, plaintiff alleged that he was arrested for trespassing without probable cause. Defendants Leonard and Rekucki contend that they are entitled to qualified immunity because it was not "clearly established" at the time of the arrest in 2011 that police officers could not arrest a person for violating the City's trespassing ordinance which provided that:

No person shall:

> (1) Trespass upon the premises of another or unlawfully remain upon the premises of another to the annoyance or disturbance of the lawful occupants.

Grand Rapids City Code, Title IX, Chapter 152, Article 1, § 9.133(1).

In order to find that a clearly established right exists, "the district court must find binding precedent by the Supreme Court, [the Sixth Circuit], the highest court in the state in which the action arose, or itself, so holding." *Wayne v. Village of Sebring*, 36 F.3d 517, 531 (6th Cir. 1994). "The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.'" *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999). "This inquiry 'must be conducted in light of the specific context of the case. [It must be] sufficiently clear that a reasonable official would understand that what he is doing violates that right . . . [and] in the light of preexisting law the unlawfulness must be apparent.' *Andrews v. Hickman Cnty.*, 700 F.3d 845, 853 (6th Cir.2012) (second alteration in original) (internal quotation marks omitted)." *Iswed v. Caruso*, -- F.3d --, 2014 WL 3607770 at *3 (6th Cir. July 22, 2014).

In support of their motion, defendants Leonard and Rekucki have submitted records which reflect that the owner of Cheero's Sports Bar "signed a no trespass letter, that the owner believed anyone hanging out in his parking lot were not patrons, and that the owner wanted the GRPD to remove trespassers." Capt. Vanderkooi Aff. at ¶ 13 (docket no. 41-4). *See also*, Grand Rapids Police Department's e-mail newsletter, *The East Edge* (sent to defendants Leonard, Rekucki and other officers) (docket no. 42-3 at 10) (noting that the owner of Cheero's "wished our department to enforce a NO TRESPASS LETTER which he signed" and that "[the owner] believes that if persons in the lot are trespassing, they are not the clientele he desires and wants them removed").

For his part, plaintiff contends that at the time of his arrest in 2011, the law was clearly established that before a person can be arrested for trespass, that person must be warned or notified to depart the premises. In this regard, plaintiff relies on *People v. Clay*, No. 183101, 1997 WL 33352783 (Mich. App. April 11, 1997). In *Clay*, the Michigan Court of Appeals addressed whether officers had probable cause to arrest the defendant for trespassing on a business's property, when the defendant did not receive a warning. The trespassing statute at issue in *Clay* provided in pertinent part as follows:

> (1) A person shall not do any of the following:
>
>> (a) Enter the lands or premises of another without lawful authority after having been forbidden so to do by the owner or occupant or the agent of the owner or occupant.
>>
>> (b) Remain without lawful authority on the land or premises of another after being notified to depart by the owner or occupant or the agent of the owner or occupant.
>>
>> (c) Enter or remain without lawful authority on fenced or posted farm property of another person without the consent of the owner or his or her lessee or agent. A request to leave the premises is not a necessary element for a violation of this subdivision. This subdivision does not apply to a person who is in the process of attempting, by the most direct route, to contact the owner or his or her lessee or agent to request consent.
>
> (2) A person who violates subsection (1) is guilty of a misdemeanor punishable by imprisonment in the county jail for not more than 30 days or by a fine of not more than $250.00, or both.

M.C.L. § 750.552(1) and (2).

In *Clay*, the state appellate court concluded that the officers did not have probable cause to arrest the defendant because under the relevant trespassing statute, a person could not be

charged with trespassing unless he or she was notified to depart the premises and then either neglected or refused to do so:

> Defendant was also not lawfully arrested for trespassing on the gas station parking lot. [Officer] Kessner testified that he believed that defendant was trespassing in the parking lot and that he was aware of a letter that the owner of the gas station had on file with the Grand Rapids Police Department giving the police permission to arrest trespassers on the lot. The applicable trespassing statute applies when an individual has been forbidden to enter or was notified to depart and neglects or refuses to do so. MCL 750.552; MSA 28.820(1). Defendant was not told to depart from the premises, and inasmuch as the lot was open to the general public, the "No Trespassing" signs were inadequate to inform defendant that he was forbidden to enter the parking lot. Accordingly, the officers did not have probable cause to arrest defendant for trespassing.

*Clay*, No. 1997 WL 33352783 at *2.

While the owner of the gas station in *Clay* utilized a "letter" giving police permission to arrest trespassers on the lot, the court's decision finding a lack of probable cause is distinguishable from the present case. Unlike the trespassing statute in *Clay*, M.C.L. § 750.552(1)(b), Grand Rapids Ordinance § 9.133(1) does not require that a person charged with the offense be notified by the owner occupant to leave the premises. Rather, the ordinance in this case prohibits "[t]respass upon the premises of another . . . to the annoyance or disturbance of the lawful occupants." *See In re Bradley Estate*, 494 Mich. 367, 377, 835 N.W.2d 545 (2013) (when construing a statute or ordinance, Michigan courts "consider the statute's plain language and we enforce clear and unambiguous language as written"). While plaintiff contends that the City's use of the Letter of Intent was unconstitutional, he provides no authority to support that contention. Nor does plaintiff cite authority which would preclude officers from relying on such a letter for enforcement of Grand Rapids Ordinance § 9.133(1). Plaintiff has not met his burden of demonstrating that Officers Leonard and Rekucki's arrest of plaintiff pursuant to Grand Rapids

11

Ordinance § 9.133(1) violated a clearly established constitutional right. *See Harlow*, 457 U.S. at 818; *Key*, 179 F.3d at 1000; *Wayne*, 36 F.3d at 531. Accordingly, Officers Leonard and Rekucki are entitled to qualified immunity with respect to plaintiff's claims.

### D. The City and Chief Belk's Motion for summary judgment

Defendants City and Chief Belk seek summary judgment on various grounds pursuant to Fed. R. Civ. P. 56. Because the real party in interest in this official-capacity suit against Chief Belk is the governmental entity (the City) and not the named official (Chief Belk), "the entity's policy or custom must have played a part in the violation of federal law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (internal quotation marks and citations omitted). "For the same reason, the only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses." *Id.* Here, because plaintiff cannot maintain a § 1983 action against defendant Officers Leonard and Rekucki for violation of his constitutional rights, he cannot maintain a § 1983 action against the City and Chief Belk based upon the officers' actions. "A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 900 (6th Cir. 2004). *See, e.g., Floyd v. City of Detroit*, 518 F.3d 398, 411 (6th Cir. 2008) ("[w]here a court determines that no violation of the plaintiff's constitutional rights occurred, obviously the governmental entity cannot be liable for its failure to train or for developing a custom that led to a constitutional violation"). Accordingly, defendant City and Chief Belk are entitled to summary judgment.

### III. RECOMMENDATION

For these reasons, I respectfully recommend that the motion for summary judgment filed by plaintiff (docket no. 31) be **DENIED**, that the motion for summary judgment filed by

defendants Leonard and Rekucki (docket no. 39) be **GRANTED**, that the motion for summary judgment filed by defendants City and Chief Belk (docket no. 59) be **GRANTED**, and that this action be **DISMISSED**.

Dated:  September 2, 2014                             /s/ Hugh W. Brenneman, Jr.
                                                                                HUGH W. BRENNEMAN, JR.
                                                                                United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).